**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JULIE BAIER, | |
| Plaintiff, | No. 18-cv-05603 |
| | Judge Franklin U. Valderrama |
| v. | |
| P.O. PIKOLCZ #118 and the | |
| VILLAGE OF CAMPTON HILLS, | |
| a Municipal Corporation, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Julie Baier (Baier) is the legal guardian of her adult daughter, Shannon Baier (Shannon). Shannon was involved in a car accident in the Village of Campton Hills. Shannon was transported from the accident scene to the hospital. Defendant Officer John Pikolcz (Officer Pikolcz), a police officer with the Village of Campton Hills (the Village), was assigned the case and visited Shannon in the hospital to complete a traffic accident report, among other things. Officer Pikolcz went into Shannon's room and began asking Shannon questions about the accident. Baier told Officer Pikolcz to stop questioning her daughter. An altercation ensued and Baier was arrested. Baier subsequently filed a complaint against Officer Pikolcz and the Village (collectively, Defendants) asserting claims for: excessive force pursuant to 42 U.S.C. §§ 1983 and 1988 (Count I); false arrest pursuant to 42 U.S.C. § 1983 (Count II); state common law claims of battery (Count III), malicious

prosecution (Count IV), and indemnification (Count V). R. 1, Compl.[1] Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. R. 58, Mot. Summ. J. For the following reasons Defendants' motion is granted in part. The Court reserves judgment on the remaining Counts, as described herein.

## Background

The following facts are set forth as favorably to Baier, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). This background section details all material undisputed facts and notes where facts are disputed. On summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Baier has an adult daughter named Shannon. R. 65, Pl.'s Resp. DSOF ¶¶ 7–8. On October 16, 2017, while driving on Route 38 in Campton Hills, Shannon collided with another car. *Id.* ¶ 7. At the time of the crash, Shannon was 31 years old, but Baier was her legal guardian. *Id.* ¶¶ 20, 22. While still at the scene, Shannon called Baier and her stepfather, Steve Baier, to inform them of the accident. R. 59-2, Shannon Dep. 20:25–21:12. An ambulance then transported Shannon from the crash site to Delnor Hospital in Geneva, Illinois. Pl.'s Resp. DSOF ¶ 11.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Officer Pikolcz of the Campton Hills Police Department arrived on the scene of the accident, but did not speak with Shannon at the scene, as she was already in the ambulance. Pl.'s Resp. DSOF ¶¶ 10, 12. Shannon's car had to be towed from the scene of the accident, but before it was, Officer Pikolcz removed personal items from Shannon's car including a book bag, a wallet, and a check. *Id.* ¶¶ 13, 15. Officer Pikolcz also removed a cannabis pipe and prescription medications, some of which were labeled with the name "Daniel Morency." R. 59-3, Pikolcz Dep. 27:4–29:1. Illinois law requires law enforcement and drivers to complete certain reports after car accidents involving property damage and personal injury. Pl.'s Resp. DSOF ¶ 14; 625 ILCS 5/11-408(a); 625 ILCS 5/11-406). Officer Pikolcz went to Delnor Hospital to complete his investigation of the accident and the crash report and brought along the items from Shannon's car. Pl.'s Resp. DSOF ¶ 17.

Once he arrived at Delnor Hospital, Officer Pikolcz went to the waiting room in the emergency department to organize and inventory the items from Shannon's car. Pl.'s Resp. DSOF ¶ 18. While in the waiting room, Baier approached Officer Pikolcz, informed him that she was Shannon's mother, and asked for Shannon's personal property. *Id.* ¶ 19. Baier told Officer Pikolcz that she did not want him speaking with Shannon, calling her a minor despite her age, and informing him that she was Shannon's guardian. DSOF ¶¶ 20–21; Pl.'s Resp. DSOF ¶¶ 20–21. Baier then showed Officer Pikolcz paperwork establishing her guardianship over Shannon and told Officer Pikolcz that she would be calling her lawyer. Pl.'s Resp. DSOF ¶¶ 20, 23.

3

The pair then left the waiting room; Officer Pikolcz headed to Shannon's room, and Baier went to get a bottle of water. Pl.'s Resp. DSOF ¶¶ 25–26. Officer Pikolcz entered Shannon's room, where Shannon and Steve Baier were. *Id.* ¶ 27. The hospital room was small. *Id.* ¶ 28. Officer Pikolcz found Shannon laying in the bed and her stepfather sitting in a chair beside the bed. *Id.* ¶ 27. The bed was in the middle of the room. *Id.* A sink and medical machines were on the left side of the bed, and two chairs were on the right side of the bed. *Id.* Officer Pikolcz began speaking to Shannon before Baier entered the room. Pl.'s Resp. DSOF ¶¶ 29, 32. Baier subsequently entered the room. *Id.* ¶ 32. Baier acknowledges that Officer Pikolcz was authorized by law to question Shannon about the traffic accident to complete the traffic crash report, but disputes whether Officer Pikolcz informed Shannon that his purpose was to complete the crash report. DSOF ¶¶ 30–31; R. 65, Pl.'s Resp. DSOF ¶ 30. Baier told Shannon to stop talking once Officer Pikolcz started asking about the contraband he recovered in Shannon's vehicle. Pl.'s Resp. DSOF ¶ 34. Officer Pikolcz states that, at this point, he explained to Baier that he had to get information for the crash report, but Baier denies that Officer Pikolcz ever said this. DSOF ¶ 35; Pl.'s Resp. DSOF ¶ 35. Officer Pikolcz warned Baier several times that she was obstructing his investigation and could be arrested. Pl.'s Resp. DSOF ¶ 36. At no point before or after Baier entered the room did Shannon request an attorney. Pl.'s Resp. DSOF ¶ 33.

Baier and Officer Pikolcz's versions of events after Baier entered Shannon's exam room continue to diverge. As Officer Pikolcz tells it, after he warned Baier that she was obstructing justice, Baier walked to the other side of the room, directly

4

towards Officer Pikolcz. *Id*. ¶ 39. Baier then squeezed into the small space behind Officer Pikolcz to move towards the head of Shannon's bed. *Id*. ¶ 38. Officer Pikolcz put his arm up and said "Stop," after which Baier pushed Officer Pikolcz's arm away and yelled at him. *Id*. ¶¶ 39–40. Officer Pikolcz announced his intent to handcuff Baier and charge her with battery. *Id*. ¶ 41. Officer Pikolcz then grabbed Baier by the arm and shoulder, ordered her to get on her knees on the floor to place her under arrest and did so. *Id*. ¶¶ 42–43.

As Baier tells it, Officer Pikolcz told her he was going to arrest her for obstructing justice after she stated she wanted to call her attorney. R. 65, PSOAF ¶ 12. Baier denies walking directly at Officer Pikolcz, but states that she was walking towards her purse, where her phone was located, in the corner of the room, trying to avoid physical contact with Officer Pikolcz. Pl.'s Resp. DSOF ¶ 37; PSOAF ¶¶ 1, 8. Baier concedes Officer Pikolcz may have thought she was trying to get between him and Shannon, but she denies that Officer Pikolcz ever put his arm up and said "Stop." Pl.'s Resp. DSOF ¶ 39. Naturally then, she also denies pushing his arm away and yelling at him. *Id*. ¶ 40. Baier denies initiating physical contact with Officer Pikolcz; to the contrary, Baier states that Officer Pikolcz grabbed Baier and threw her into the exam room wall. PSOAF ¶¶ 8–9. Officer Pikolcz then arrested her, grabbing Baier by the arm and shoulder, ordering her to get on her knees on the floor to place her under arrest, and handcuffing her behind her back while she was on the floor. Pl's Resp. DSOF ¶¶ 42–43.

After the arrest, Officer Pikolcz transferred Baier to the Campton Hills Police Department and issued her a Notice to Appear for the charge of Obstructing a Police Officer. Pl.'s Resp. DSOF ¶¶ 45–46. Baier appeared in Kane County Court for the charge. *Id.* ¶ 47. On May 1, 2018, the Kane County State's Attorney's Office filed a Motion to Amend the charge to add additional counts: battery and resisting arrest. On May 8, 2018, the State's Attorney *nolle prossed*[2] the charges. *Id.* ¶¶ 48–49. Officer Pikolcz had no contact with the Kane County State's Attorney's Office about Baier's criminal case until after it was dismissed. *Id.* ¶ 50.

Baier filed suit against Defendants asserting claims for: excessive force pursuant to 42 U.S.C. §§ 1983 and 1988 against Officer Pikolcz (Count I); false arrest pursuant to 42 U.S.C. § 1983 against Officer Pikolcz (Count II); state common law claims of battery against Officer Pikolcz (Count III), malicious prosecution against Officer Pikolcz (Count IV), and indemnification against the Village (Count V). Defendants' motion for summary judgment is before the Court.

### Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled

---

[2]"A *nolle prosequi* is not a final disposition of a case but is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution." *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 751 (N.D. Ill. 2012) (citing *Washington v. Summerville,* 127 F.3d 552, 557 (7th Cir. 1997)).

to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## Analysis

At the outset, Baier argues that the Court should deny the motion for summary judgment out of hand and enter an order that Defendants moved for summary judgment in bad faith, as there are multiple issues of fact that preclude summary judgment, all of which the Defendants knew about before filing the motion. Pl.'s Resp. at 3–4. Not surprisingly, Defendants disagree with Baier's characterization of the disputed facts and insist that summary judgment is proper here as the material facts are not disputed. The Court agrees with Defendants that while there may be some disputed facts, where those facts are not material, summary judgment may be proper.

7

*See McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012). Therefore, the Court will proceed to consider the merits of Defendants' motion for summary judgment.

The Court begins with the False Arrest count (Count II), as it has underpinnings to both Counts I and II.

## I. False Arrest (Count II)

In Count II, Baier asserts a claim for false arrest pursuant to 42 U.S.C § 1983, alleging that Officer Pikolcz's actions violated her Fourth and Fourteenth Amendment rights. Section 1983 creates a federal cause of action for the "deprivation under color of law, of a citizen's rights, privileges or immunities secured by the constitution or laws of the United States." 42 U.S.C. § 1983. The Fourth Amendment protects "persons from unreasonable searches and seizures." U.S. CONST. AMEND IV.

To establish a claim under Section 1983, a plaintiff must show that the defendant: (1) acted under the color of state law; and (2) deprived the plaintiff of a constitutionally protected right. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). It is undisputed that Officer Pikolcz was employed by the Village of Campton Hills and was performing his official duties at the time of Baier's arrest. Pl.'s Resp. DSOF ¶ 5; R. 59, Memo. Summ. J. at 9. Therefore, Baier has shown that Officer Pikolcz was acting under the color of state law, and the issue before the Court is whether a reasonable trier of fact could find that Officer Pikolcz deprived Baier of her Fourth and Fourteenth Amendment rights.

To prevail on her claim for false arrest, Baier must show that there was no probable cause for her arrest. *Williams v. City of Chi.,* 733 F. 3d 749, 756 (7th Cir.

2013). "Probable cause is an absolute defense to a claim for wrongful arrest under section 1983 against police officers." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "But even where a police officer is found to have lacked probable cause in making the determination to arrest, detain, or prosecute a suspect, the doctrine of qualified immunity may still protect him or her from suit." *Gibbs v. City of Chi.*, 2014 WL 1031440, at *2 (N.D. Ill. Mar. 18, 2014 (citing *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012)). Here, Officer Pikolcz argues that probable cause shields him from liability, and that even if the Court disagrees, he nevertheless is immunized from suit pursuant to the doctrine of qualified immunity. Memo. Summ. J. at 15–16.

Qualified immunity "'shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 308 (2015) (*per curiam*)). "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices on the other." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (internal citation omitted). "The purpose of qualified immunity is to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

9

Qualified immunity is an affirmative defense, but once a defendant properly raises the defense, the burden shifts to the plaintiff to defeat it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2722 (2020). Courts, in determining whether qualified immunity applies, engage in a two-prong inquiry. *Rose ex rel. Estate of Williams v. Cline*, 902 F.3d 643, 648 (7th Cir. 2018). Under the first prong, the court inquires whether the facts, taken in the light most favorable to the injured party, show that the officer's conduct violated a federal right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Under the second prong, the court inquires whether the constitutional right was clearly established at the time of the challenged conduct. *Id.* "Although the constitutional right to be free from arrest without probable cause [is] well-established," a defendant officer is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey*, 148 F.3d at 725; *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."). Courts occasionally refer to this standard for qualified immunity as "arguable probable cause." *Lofgren v. Wojowski*, 2016 WL 5477527, at *5 (N.D. Ill. Sept. 29, 2016) (quoting *Humphrey*, 148 F.3d at 725).

"Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williams*, 733 F. 3d at 756 (internal citation omitted). In other words, "courts evaluate probable cause not

on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (internal citation omitted). Probable cause does not "require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Wheeler*, 539 F.3d at 634 (internal citation omitted). "In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the position of the officer." *Id.* Thus, even if an arrest or detention is later determined to have been lacking in probable cause, where a defendant-officer had a "subjective belief that he had probable cause" that was "objectively reasonable," that officer "is entitled to immunity." *Humphrey*, 148 F.3d at 726 (citing *Hunter*, 502 U.S. at 227). In the Seventh Circuit, "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." *Eversole v. Steele*, 59 F.3d 710, 717–18 (7th Cir. 1995) (internal citations omitted) (emphasis added).

Baier was arrested and charged with the offense of Obstructing a Peace Officer in violation of 720 ILCS 5/31-1 of the Illinois Criminal Code. That statute provides that: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized at within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a). While older case law suggested that a "physical act" was an element of the offense of obstruction of justice, the Illinois

Supreme Court has clarified that a "physical act" is not an essential element of the offense. *People v. Baskerville*, 963 N.E.2d 898, 905 (Ill. 2012).

It is undisputed that Officer Pikolcz went to the hospital to complete his investigation of Shannon's traffic accident and complete the crash report. Pl.'s Resp. DSOF ¶ 17. It is also uncontested that Officer Pikolcz went to the hospital emergency room to organize and inventory the items that he had removed from Shannon's vehicle. *Id.* ¶ 18. It was while in the waiting room that he met Baier. *Id.* ¶ 19. Baier does not contend that she was not aware that Officer Pikolcz was a police officer. *See generally* R. 66, Resp. Summ. J.; *see also* Pl.'s Resp. DSOF ¶¶ 19–21. Baier went to get a bottle of water and Officer Pikolcz headed towards Shannon's room. Pl.'s Resp. DSOF ¶¶ 25–26. Officer Pikolcz entered the small room where he found Shannon laying in the bed and her stepfather sitting in a chair beside the bed. *Id.* ¶ 27. Officer Pikolcz began to ask Shannon questions about the accident. *Id.* ¶¶ 31, 33–34. At some point, Baier told Officer Pikolcz to stop questioning Shannon. *Id.* ¶ 34. Shannon never asked to speak to a lawyer.[3] *Id.* ¶ 33. Officer Pikolcz informed Baier several times

---

[3]While Baier does not explicitly argue that, as Shannon's guardian, Baier had the right to invoke the right to counsel on Shannon's behalf, to the extent she argues it implicitly, such an argument fails for two reasons. First, by failing to explicitly make such an argument or support it with caselaw, she has waived any such argument. *See See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court"); *see also White v. Richert*, 2019 WL 4062539, at *9 (N.D. Ill. Aug. 28, 2019) (citing *Pelfrense v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him.")). Second, Illinois caselaw suggests that the argument would fail on its merits. Illinois law does not allow a third-party guardian to invoke counsel on behalf of a minor where the minor is not incapable of invoking or of knowingly and intelligently waiving the right to counsel. *See People v. Young*, 850 N.E.2d 284, 300 (Ill. App. Ct. 2006). The Court sees no reason why this principle should not apply to Shannon, a thirty-one-year-old, who did not request a lawyer herself (Pl.'s Resp.

that she was obstructing his investigation and could be arrested. *Id.* ¶¶ 36; Defs.' Resp. PSOAF ¶ 12. At some point, Baier walked in the direction where Officer Pikolcz was standing. Pl.'s Resp. DSOF ¶ 37. Baier does not dispute that Officer Pikolcz "may have thought that [Baier] was trying to get between [Officer Pikolcz] and Shannon Baier." *Id.* ¶ 39. An altercation ensued, whereby Officer Pikolcz grabbed Baier, ordered her to her knees, and placed her under arrest. *Id.* ¶¶ 42–43.

The Court finds that in viewing the facts in the light most favorable to Baier, Officer Pikolcz had probable cause to arrest Baier for obstruction of justice, as Baier prevented Pikolcz from performing his official duties (completing a crash report) by instructing Shannon not to answer his questions (Pl.'s Resp. DSOF ¶¶ 34, 36); moreover, Baier admits that Officer Pikolcz "may have thought that [Baier] was trying to get between [Officer Pikolcz] and Shannon Baier" when Baier walked around the bed (*id.* ¶ 39). Under the "arguable probable cause" standard, the Court finds that a reasonable police officer in Officer Pikolcz's position reasonably could have perceived that Baier was attempting to obstruct an investigation report required under Illinois law. *See* 625 ILCS 5/11-408(a); 625 ILCS 5/11-406; *Baskerville*, 963 N.E.2d at 906 (providing misinformation that hindered police officer's performance of his authorized duties may constitute obstruction under 720 ILCS 5/31-1(a)). Baier relies on *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009) to argue that Officer Pikolcz lacked probable cause to arrest her for obstructing a peace officer.

---

DSOF ¶¶ 22, 33) and who has spoken to police by herself on multiple previous occasions (*id.* ¶ 24). Therefore, it appears that under Illinois law, Baier's statements made to Officer Pikolcz that she intended to call her lawyer would not invoke Shannon's right to counsel.

Resp. Summ. J. at 10. The *Gonzalez* decision rested in large part on whether the plaintiffs physically resisted or impeded the police officers' duties, but *Gonzalez* was decided before the Illinois Supreme Court held that obstructing a peace officer does *not* require a physical act. 578 F.3d at 538. Moreover, in *Gonzalez*, the facts surrounding the plaintiffs' interactions with the police officers were disputed; the plaintiffs claimed they simply approached the officers to ask what was happening. *Id.* Here, it is undisputed that Baier told Shannon not to answer Officer Pikolcz's questions as he was trying to complete his investigation report, and she acknowledged that he may have believed that she was attempting to physically put herself between Shannon and Officer Pikolcz just before the arrest. Such facts are sufficient to establish probable cause for obstructing a peace officer.

Baier contends that summary judgment is improper as there is a genuine issue of material fact whether Baier ever made physical contact with Officer Pikolcz, arguing that this case is similar to *Chelios v. Heavner*. Resp. Summ. J. at 6–7. In *Chelios*, the Seventh Circuit reversed the district court's granting of summary judgment in favor of the defendant-officer because there was a dispute whether the plaintiff made physical contact with the police officer. 520 F.3d 678, 688 (7th Cir. 2008). Officer Pikolcz counters that *Chelios* is distinguishable. Reply Summ. J. at 2. The Court agrees with Officer Pikolcz.

In *Chelios*, the plaintiff was charged with battery, an offense that requires physical contact between the police officer and the arrestee. 520 F.3d at 686–88. The plaintiff insisted that he did not physically touch the officer or act in any way that

gave the officer probable cause to arrest him. *Id.* at 686. Here, Baier was charged with obstructing a peace officer. Pl.'s Resp. DSOF ¶ 46. Under the definition of that offense under Illinois law, no physical contact between Baier and Officer Pikolcz is necessary. *Baskerville*, 963 N.E.2d at 906. True, in this case as in *Chelios,* it is very much in dispute whether Baier made physical contact with Officer Pikolcz. *See* Pl.'s Resp. DSOF ¶¶ 37–40. That factual dispute, however, is not material to the charge of obstruction of justice. In short, the Court finds that a reasonable trier of fact could conclude that Baier prevented Officer Pikolcz from performing his official duties.

Baier spills much ink in arguing that a question of fact exists whether Officer Pikolcz had probable cause to arrest Baier for battery. Resp. Summ. J. at 6–7. While Officer Pikolcz testified that his "intent" at the time of the arrest was to charge Baier with battery (Pl.'s Resp. DSOF ¶ 41), the actual charge included in the official Notice to Appear prepared by Officer Pikolcz was "obstruction of justice" (*id.* ¶ 46). It was the State's Attorney who later added battery as one of the charges against Baier. *Id.* ¶ 48. Baier contends that probable cause must also exist for the battery charge because it is not "closely related" to the charge of obstructing a peace officer. Resp. Summ. J. at 7–9. But the cases relied on by both parties concerning the relatedness of the two crimes predate the Supreme Court's decision in *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004), in which the Court condemned the "closely related offense" rule. Post-*Devenpeck*, "an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the

suspect." *Fox v. Hayes,* 600 F.3d 819, 837 (7th Cir. 2010); *see also Sroga v. Weiglen,* 649 F.3d 604, 608 (7th Cir. 2011) ("The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim."). Therefore, so long as Officer Pikolcz had probable cause to arrest Baier for one of the charges filed against Baier—here, obstruction of a peace officer—Baier's unlawful arrest claim must fail.[4] And as discussed above, the Court finds that at the very least, arguable probable cause existed for obstructing a peace officer. The Court grants summary judgment for Officer Pikolcz on Baier's false arrest claim.

## II. Excessive Force (Count I)

In Count I, Baier asserts a claim of Excessive Force pursuant to 42 U.S.C. §§ 1983 and 1988, Compl. at 1–3. Officer Pikolcz contends that the force he used to arrest Baier was reasonable, given the facts and circumstances of Baier's arrest. Memo. Summ. J. at 19–24.

"A 'claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's reasonableness standard.'" *Gysan v. Francisko,* 2019 WL 8359213, at *4 (N.D. Ill. Feb. 14, 2019), *aff'd,* 965 F.3d 567 (7th

---

[4]Although both parties apply the wrong standard, the Court must apply the operative "any charge" standard. The Court finds that additional briefing on the correct standard would not save Baier's claim, nor is Baier prejudiced by the Court's application of the correct law. While the current "any charge" standard may be more favorable to defendant-officers than the outdated "closely related" charge standard applied by the parties, the Court is not convinced by Baier's arguments under the outdated "closely related" standard—although it need not decide the issue definitively, as that standard has been overturned—so any similar arguments Baier could make under the "any charge" standard (that is arguably more favorable to defendant-officers) would necessarily fail.

Cir. 2020) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)). "Objective reasonableness is a pure question of law." *Id.* (internal citation omitted). "Determining objective reasonableness requires balancing the government interests with the individual's Fourth Amendment interests and 'requires analyzing the totality of the circumstances.'" *Id.* (quoting *Plumhoff*, 572 U.S. at 774). "The Fourth Amendment reasonableness standard makes allowances for the realities police officers confront in their work." *Jones v. DuPage Cty. Sheriff's Off.*, 2021 WL 1172656, at *2 (N.D. Ill. Mar. 29, 2021). Factors to consider include "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016).

Baier counters that summary judgment is improper, as there are genuine issues of material fact regarding whether Baier initiated physical contact with Officer Pikolcz. Resp. Summ. J. at 11–14. Baier posits that if she never made physical contact with Officer Pikolcz, then "the level of force he employed was grossly disproportional to the 'threat' she purportedly posed." *Id.* at 12–13. Officer Pikolcz argues that his use of force was reasonable, and that an officer who has the right to arrest an individual also has the right to use some degree of physical force of threat of force to effectuate the arrest. Reply Summ. J. at 8 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009)). He contends that, based on Baier being confrontational prior to her arrest, combined with the small space that caused Baier to be in close proximity to him when she walked to his side

of Shannon's bed, it was reasonable for him to grab Baier's arm and to force her to the floor to keep control of the situation. Reply Summ. J. at 8–9.

Considering the evidence in the light most favorable to Baier, after Baier stated that she wanted to call her lawyer, Officer Pikolcz told her that he was going to arrest her for obstructing justice. PSOAF ¶ 12. Baier then walked around Shannon's bed towards her phone located in her purse; she did not walk directly at Officer Pikolcz, but instead tried to avoid physical contact with Officer Pikolcz. Pl.'s Resp. DSOF ¶ 37; PSOAF ¶¶ 1, 8. As noted above, Baier concedes Officer Pikolcz may have thought she was trying to get between him and Shannon, but she denies that Officer Pikolcz ever put his arm up and said "Stop" and that she pushed away his harm or yelled at him. Pl.'s Resp. DSOF ¶¶ 39–40. Baier states that she never initiated physical contact with Officer Pikolcz (PSOAF ¶ 8); rather, she put her hands out in front of her to "surrender." R. 59-5, Hackman Dep. at 32:15–33:9. Officer Pikolcz then grabbed Baier and threw her into the exam room wall. PSOAF ¶ 9. Officer Pikolcz arrested her, grabbing Baier by the arm and shoulder and ordering her to get on her knees on the floor to place her under arrest, handcuffing her behind her back while she was on the floor. Pl's Resp. DSOF ¶¶ 42–43. He placed his knee on her back while she was on the ground, not resisting. Resp. Summ. J. at 13 (citing R. 59-4, Baier Dep. at 114:15–16). Baier has experienced immediate and long-term pain in her shoulder, back, and arm. *Id.* (citing Baier Dep. at 96:16–20, 98:14–16, 114:15–16; Shannon Dep. at 38:18–21).

While Officer Pikolcz is correct that an officer may use "some degree of physical force" to effect the arrest, "that right is circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback*, 569 F.3d at 772. And the Court finds that, when viewing the evidence in the light most favorable to Baier, she did not initiate physical contact nor did she resist arrest, and a reasonable jury could find that Officer Pikolcz's force—grabbing her shoulder and arm, slamming her into the wall, and forcing her to the ground where he put his knee on her back—was unreasonable.

This determination does not end the analysis, as Officer Pikolcz again argues that he is entitled to qualified immunity as to Baier's excessive force claim. Memo. Summ. J. at 9–11. The Court next addresses the issue of qualified immunity.

## A. Qualified Immunity

The Supreme Court has held that "use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 13). The Supreme Court further explained, "[p]recedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* (quoting *Mullenix*, 577 U.S. at 14). The *plaintiff* bears the burden of showing that the defendant's conduct violated clearly established law; a plaintiff may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a

reasonable officer would have known this without court guidance. *See Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018).

Here, Baier has not identified any "existing precedent" that "squarely governs the specific facts at issue" here. *Kisela*, 138 S.Ct. at 1148. In fact, the facts of each case cited by Baier vastly differ from the undisputed facts here (and even from Baier's own version of events). Baier relies on *Alicea*, 815 F.3d 283 to argue that "force is only reasonable to the threat posed," and because Baier did not make physical contact with Officer Pikolcz, the force he employed was "grossly disproportional." Resp. Summ. J. at 12–13.[5] In *Alicea*, the Seventh Circuit found that genuine issues of material fact existed as to whether a burglary suspect was resisting arrest, and as to the level of force used by police officer, which precluded summary judgment on the issue of whether officers were entitled to qualified immunity on a suspect's excessive force claims. 815 F.3d at 292. It found that the defendant-police officers' alleged actions, if proven, in commanding a dog to attack plaintiff-suspect who was complying with orders, and punching, stomping, and kicking him when he was on the ground, violated the plaintiff's clearly established rights for qualified immunity purposes. *Id.* No version of facts before the Court in the instant case shows that Officer Pikolcz's use of force was anywhere near as extreme as that at issue in *Alicea*.

---

[5]The other cases cited by Baier in support of her excessive force argument are all cited for general propositions of law (Resp. Summ. J. at 12 (citing *Abdullahi v. City of Chi.*, 423 F.3d 763, 773 (7th Cir. 2005); *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002); *Haynes v. Lansing*, 656 F. Supp. 2d 783, 793 (N.D. Ill. 2009)), some of which do not even involve excessive force claims (*id.* (citing *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (denying defendant-officers' summary judgment motion on unreasonable seizure claim)).

And although the Court found that a reasonable factfinder could find that Officer Pikolcz's use of force was unreasonable, it cannot say that, even under Baier's version of events, that Officer Pikolcz's "conduct in question [was] 'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" *Dockery*, 911 F.3d at 466–67 (quoting *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 723–24 (7th Cir. 2013)).

Neither party has briefed the question of whether analogous precedent is sufficient to defeat Officer Pikolcz's qualified immunity claim, and as noted above, the Court cannot conclude that Officer Pikolcz's conduct was "so egregious and unreasonable" as to eliminate any doubt on the question. Therefore, the Court reserves ruling pending additional briefing on whether established law permitted Officer Pikolcz's use of force, under the facts construed in Baier's favor. *See Whitney v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2019 WL 218801, at *7 (N.D. Ill. Jan. 16, 2019) (reserving ruling on qualified immunity defense to excessive force claim where neither party briefed whether precedent defeated the defense).

### III.    State Law Claims (Counts III and IV)

Baier also asserts two state law claims, for battery (Count III) and malicious prosecution (Count IV). Compl. at 3–4. Because this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1343 (Compl. ¶ 2), it has discretion to relinquish its jurisdiction over these claims if the related federal claims are dismissed. *Zappa v. Gonzalez*, 819 F.3d 1002, 1006 (7th Cir. 2016). As discussed above, the Court grants summary judgment in favor of Officer Pikolcz on Baier's

Section 1983 false arrest claim, and reserves judgment on the Section 1983 excessive force claim pending the parties' supplemental briefs on Officer Pikolcz's qualified immunity defense. Therefore, the Court reserves judgment on Baier's state law claims for battery and malicious prosecution pending the resolution of the federal excessive force claim.

## IV.    Indemnification (Count V)

Baier also asserts a claim for indemnification against the Village. Compl. at 5. Officer Pikolcz argues that Section 2-109 of the Illinois Tort Immunity Act states that a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. Memo. Summ. J. at 33 (citing 745 ILCS 10/2-109). Therefore, Officer Pikolcz reasons that if this Court grants summary judgment in his favor, it should also find that the Village is immune from liability pursuant to Section 2-109. *Id.* Baier does not dispute this principle, but rather argues that summary judgment is not warranted for Officer Pikolcz, and as such, her indemnification claim against the Village also survives. Pl.'s Resp. Summ. J. at 19.

The Court agrees that Baier's indemnification claim against the Village rises or falls along with her individual claims against Officer Pikolcz. Therefore, the Court enters judgment in favor of the Village on Baier's indemnification claim as it pertains to her Section 1983 claim for false arrest, and reserves judgment on the indemnification claims as it pertains to the remaining Section 1983 claim for excessive force and related state law claims for battery and malicious prosecution.

22

**Conclusion**

For the reasons given above, Defendants' motion for summary judgment is granted in part. Defendants' motion for summary judgment is granted on the Section 1983 claim for false arrest (Count II) as to Office Pikolcz, and on the indemnification claim (Count V) against the Village of Campton Hills as it relates to the Section 1983 false arrest claim. The Court reserves judgment on the Section 1983 claim for excessive force (Count I) pending the parties' submission of supplemental briefs on whether established law permitted Officer Pikolcz's use of force, under the facts construed in Baier's favor. Baier is ordered to file a supplemental brief on this question by September 17, 2021; Defendants are ordered to file a response brief by October 1, 2021. Each brief is limited to 10 pages. The Court also reserves judgment on the state law claims for battery (Count III) and malicious prosecution (Count IV), as well as the indemnification claim (Count V) as it relates to Counts I, III, and IV, pending the Court's decision on the Section 1983 excessive force claim.

Dated: August 26, 2021

_Franklin Val_

United States District Judge
Franklin U. Valderrama